May it please the court, I'm Charles Rankin representing Mr. Thompson. I want to undertake the uphill battle to persuade the court to accept and address the issue I raise with you today, and that is the issue of the United States v. Anthony Mondrez-Thompson. I realize that it's an uphill battle, but I think that the court should consider it because of several reasons which reflect case law without tardily raising an issue. First of all, it's purely a legal question whether the adjustment in the guidelines is a violation of the Second Amendment in light of Gruen and the district court case price. Secondly, there's no factual supplement to the record that needs to be considered. Thirdly, there's no prejudice to the government to addressing the issue. And finally, it's a significant constitutional issue. As I said in the motion. Is it a clear or obvious one? Well, it wasn't clear and obvious to me when I filed the original brief, and it only became obvious or clear in my mind when Mr. Thompson pointed out the district court decision from West Virginia. Having reviewed that decision and re-read Gruen, I do think that it's clear and obvious in the sense that that court really did take the historical analysis, which is required by Gruen, through the lens of when serial numbers were in use and when Congress addressed the use of serial numbers, first in the 1930s in requiring them to be imprinted on short barrel rifles and machine guns, 1968 when they said that weapons in commerce have to have that, and for the first time criminalized it in 1968. And then finally criminalized the simple possession of a firearm with an obliterated serial number in 1990. Counsel, this is certainly a rapidly developing area of the law. to help the court conduct the historical analysis that Gruen contemplates. And that, as I recall, and maybe it's been decided, I think the judge wanted the parties to comment on the advisability of doing that. So I don't know if that's actually happened yet, but that at least suggests that there may be important development that could take place at the district court level that could help an appellate court sort through this issue. So when you say it's just kind of a straightforward issue of law, I question whether that's accurate in light of the importance of the historical analysis, which is very much a factual type of analysis. So again, doesn't that suggest that it would be better to allow this to develop below rather than try to take it on now? I saw the report of the district judge's question to the parties, and I don't believe that has been decided by the district judge. But if you focus on Justice Thomas' analysis in Gruen going through a very long and studious history of the development of licensing material, I don't think that's developing a factual record so much as it is legal analysis that courts do every day. Here, aren't we dealing with a sentencing enhancement, though? Yes. And that was not what was being dealt with in the district court decision, or it was? No. The district court decision in Price and the later one from Friday, which I pointed out this morning. Both criminalizing the possession. 922K, which is the criminal offense. So what we would need is history about what kind of things could be considered at sentencing. Yes, but I think that the principle, if in fact it is unconstitutional to impose a requirement of no alteration or obliteration of the serial number. But that's in the context of when you're not otherwise committing a crime, and here it's an enhancement to an otherwise criminal activity, which is a fairly different question on that ground alone that would seem to me reason to think it may be not clear or obvious. Well, my understanding of the guidelines, I mean, take ex post facto law as you're interpreting a new guideline and does it heighten the punishment from the time the defendant committed the offense as opposed to sentencing date. I think the constitutional issue applies at sentencing. I think that's true for ex post facto. It's just a matter of whether if Bruin's saying we do or don't have a tradition of considering things with respect to your conduct, Bruin was dealing with a prohibition on having a certain kind of item. The cases you cite are similar like that. This is a question of whether when you have done something criminal otherwise, can we enhance your sentence based on this kind of activity? That's just a different historical inquiry. But I think the principle applies nonetheless that if it's unconstitutional. Well, it's unconstitutional to prohibit people from having a gun without a blunted serial. This is different. This is prohibiting you from doing something criminal while also doing this, right? Well, I think it's enhancing the punishment because of something. Only if you've first done this other thing that's criminal. Correct. Yeah. So that's a fairly different situation than just prohibiting the activity itself. You don't get in the door being subject to it until you've done something criminal otherwise. But I don't think you can take something that's prohibited by the Constitution and use that as a sentencing factor. Maybe I'm just being circular here. Putting aside this question, which you've argued well, do you want to discuss the enhancement itself? The connection enhancement. I'm sorry? The connection enhancement. So there are two issues that I have to deal with there. Obviously, the appeal waiver on that issue is harder for me, I think, than the constitutional issue I addressed in the supplemental brief. We've pointed out the confusion by the district judge in explaining the appeal waiver. Counsel, why do you – yeah, there were some moments perhaps of lack of clarity by the judge. But on the critical point, it seems to me he made very clear to your client that at sentencing, absolutely you can argue against the application of any of the enhancements. But if I sentence you within the agreed upon sentence, you will not be able to pursue an argument against those enhancements on appeal. I mean, there's actually a moment in the plea colloquially where he makes that unmistakably clear. Isn't that so? He certainly gets there eventually. And my contention is that what preceded that was confusing. It was clear that Mr. Thompson was focused on being able to challenge those three enhancements and perhaps obsessing over those three enhancements. And I just think that the record, especially when the judge adds at the end, that in most circumstances you've waived your right to appeal. Now, I know the court has said in general that that isn't sufficient necessarily to excuse an appeal waiver. But I think in this case where you have the confusing or the misinformation that the judge told the defendant about his ability to appeal the suppression. Mr. Wright, if I might, it's very short. Here's exactly the colloquy that I think is at issue here. This is the defendant asking the judge, based on what I asserted earlier as far as my right to preserve the challenge of the aggravating factors of the sentence enhancements, those issues will still be preserved, though, right, if they ever become an issue. They will be preserved for me. You can argue that before me. Defendant, okay. The court. But once I impose the sentence that's between five years and eight years, then you have no right to appeal that issue to the Court of Appeals. The defendant, all right. How could that be any clearer about where the enhancements can be addressed and where they cannot be? Well, I think in the, I don't know if it's in the next breath, but shortly thereafter, he then says, in most circumstances. So I just think that that record is so laden with ambiguity. He didn't read the short appeal waiver. He didn't show it to him. He didn't recess so that the defendant could go back to his cell and get the plea agreement. In those circumstances, I think that the court should excuse the appeal waiver and perhaps address the, you know, I understand the court didn't want to have a formula for district judges in Teeter, but perhaps that's its time now, 21 years and many, many appeals later. It seems like it would be prudent for a district judge to just read the appeal waiver, ask the defendant if he or she has discussed it with the defense counsel, and if the defendant understands it and has any questions about it, then we wouldn't be here but for the miscarriage of justice. Can I ask you on the merits of the in-connection claim? As I understand our case law, we distinguish between instances in which the firearm was proximate to the drugs by virtue of coincidence or accident and circumstances in which it was proximate by design, roughly speaking. Here, there's no argument or evidence indicating it was present by coincidence or accident, correct? Right. I mean, Judge McConnell was concerned about that issue and asked the prosecutor at sentencing, what do you make of this? Is he just a drug transporter, I mean, a gun transporter, or is he coming here to inflict some kind of mayhem? And the prosecutor really couldn't answer that because there's nothing in the record. So to me, the problem with that application note is that it basically cuts off any analysis. But I guess before I'm getting to the application note, one way to read the application note is that it's saying it can apply when proximate, not that it must. I think that, I mean, was it for auto that the court kind of acknowledged the application note and said? But have we ever said that in a case in which there was evidence that it was there by coincidence or accident? No. And I think the judge made a decision in 2020 on that issue, kind of acknowledging the… Right. So in a case like this, if we were doing miscarriage of justice or clear, obvious error, and there's nothing to indicate it was there by coincidence or accident, then what's the problem with concluding that the enhancement could apply? Because it certainly is the case that when it's not by coincidence or accident, it can be understood to have a potential for harm and, therefore, to be a permissible conclusion that's in connection with it only becomes problematic, I think, when in connection is read to mean even when it's there only by coincidence or accident. Well, it's, I mean, if you read the cases, and in this case, I mean, the government's correct. No one referred to the application note during the writings or at argument, but I just think that the close proximity language in the application note has cut off any analysis, and the analysis that Judge Lopez dealt with a couple of years ago is something that doesn't take place. It's just, it's in the car, so we give him the adjustment.  Thank you. Anything further? Thank you, counsel. At this time, would Attorney Zurier please introduce herself on the record to begin? May it please the Court, Lauren Zurier for the government. I have three brief points to make, Your Honor. First, as to the appeal waiver, the government asks that it be enforced. I think the one thing that is clear from this plea colloquy, by the end of it, is that the defendant absolutely knew that he had waived his right to appeal sentencing enhancements. He had the right to argue against the application of them at sentencing, but he definitely, as Judge Lopez pointed out, had no right to appeal it to this Court. Putting that issue aside for the moment, on the Kaiser issue, this Court has had a long tradition of confining the application of the in-connection with enhancement to cases in which the proximity was, it was a logical nexus. There was a logical nexus. It isn't physical proximity. It's whether or not the gun can be used to further the drug transaction. And here, the defendant conceded he possessed the methamphetamine for purposes of distribution. He had a loaded gun under the seat right next to him. He had the paraphernalia associated with the gun on the seat right next to him. This is, if you look at the cases like Cannon all the way back to Serderman, if you look at this Court's 25 years of case law applying this, actually 30 years of case law applying this sentencing, the application of it in this case is completely consistent, regardless of whether the application note ever existed. So there's no error. There's certainly no plain error, and it would make no sense to consider Kaiser on this record. Finally, as to the Bruin issue, the government's position is that the issue has been waived. It wasn't raised until after the reply brief went in. Even though Bruin was decided last June, it's not the kind of issue where there's a highly convincing position that the defendant can make that whatever case law exists helps him. In fact, right now we've got a decision out of West Virginia that's been appealed to the Fourth Circuit. There's a contrary decision coming out of Texas, and neither of those decisions has anything to do with the sentencing enhancement. So really there's no law on the issue that he's asking this Court to apply it on. And as the Court has already noted in my brother's argument, there's no case law concerning how sentencing enhancements existed in 1791. It just wouldn't make any sense for this Court to consider the Bruin issue on the merits on the record before it, given the state of the law. And, therefore, I'd ask that the Court enforce the sentencing, the appeal waiver, and dismiss the appeal. Thank you very much.  Just very quickly, Counsel. Yes. I gather it would be your position that the phrase that's used in the guidelines, in connection with, is inherently ambiguous, and hence would justify under the Supreme Court case law reference to the application. I know it's your position that's not involved in this case, but I guess I'm just curious. I understand your question. Well, here's what I'd say to that, Your Honor. Back in 1993, this Court said that it could interpret the plain language, and that's why it pulled in the Supreme Court's decision in Smith v. United States. Since then, of course, the Third Circuit has determined that the phrase is inherently ambiguous because it can be applied in different ways in different contexts. I don't really know what to do with that. To be honest with you, I think in connection with, to me, does imply a logical nexus. And while that can be rearranged and applied in a variety of circumstances, logical is logical. Does the application note, in your view, say anything different than that? No, it doesn't, because in addition to the sections that the parties have addressed in their briefs, there's another section that was added later after the 14b, 14e, which reinforces that the district court should be considering this in light of the logical nexus between the firearm and the other gun. It seems to me you could read the application note simply to say that it is possible, it does apply when there is proximity, not to say that it must apply even when it's an accidental proximity. I think that's the import of 14e when you take it in conjunction with 14a and b. The way I read 14b is simply here's a situation where we have so many drug transactions where firearms are involved. This is kind of a special case, and there had been a split in the circuits, which is why the court clarified it. But I think overall, again, as the government's argued, it's completely consistent with logical nexus. But that split didn't involve any court saying it could apply when it was accidental or coincidental. I don't recall a case that I've read, and certainly in this circuit, where the court has said it could apply accidentally. I think that the classic phrase from Sturtevant is something like somebody committing money laundering with a gun in his drawer, where the two just happen to go together and there's no relationship between them. That's certainly not this case. Thank you very much. Thank you, counsel. That concludes argument in this case.